**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**San Antonio Division**

| | |
|---|---|
| WHITE BAY PARTNERS, LLC )<br><br>Plaintiff, )<br><br>v. )<br><br>SOGGY DOLLAR CAMP, LLC )<br><br>Defendant. ) | )<br>)<br>)<br>)<br>)<br>Civil Action No.:<br>)<br>**JURY TRIAL DEMANDED**<br>)<br>) |

## COMPLAINT

Plaintiff White Bay Partners, LLC ("White Bay"), by and through its attorneys, for its Complaint against Defendant Soggy Dollar Camp, LLC ("Soggy Dollar Camp") alleges, on knowledge as to its own actions and otherwise upon information and belief, as follows:

### I. PRELIMINARY STATEMENT

1.      This is a complaint for trademark infringement, arising from Defendant's willful misappropriation of White Bay's valuable intellectual property assets.

2.      Defendant has unlawfully infringed upon White Bay's intellectual property by using White Bay's trademarks to promote their business, causing confusion in commerce.

### II. JURISDICTION

3.      This Court has subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. §§ 1051 et seq., 1119, and 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), 2201, and 2202, because this case arises under the Trademark Act of 1946, 15 U.S.C. § 1051 et seq. This Court has supplemental jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1367.

1

4. On information and belief, this Court has personal jurisdiction over Defendant because Defendant's Principal Place of Business is 9168 River Road, New Braunfels, Texas and is registered with the Texas Secretary of State's Office.

5. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant systematically conducts business operations throughout and has purposefully availed itself of the privileges of conducting business in the State of Texas, by offering its services to the citizens and persons of the State of Texas.

### III. VENUE

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this action occurred in this District.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this District with respect to this action.

### IV. PARTIES

9. Plaintiff White Bay is a limited liability company formed under the laws of Delaware with its principal brand licensing office located at 455 2ND Street SE, 5TH Floor, Charlottesville, Virginia, 22902.

10. White Bay is a brand holding company based in Charlottesville, Virginia, and has a brand licensing division which solicits and maintains licenses for the many common law and federally registered trademarks incorporating the distinctive term, "SOGGY DOLLAR" within the United States (the "U.S.") and operates the Bar's official website.

11. White Bay's predecessor in interest created a simple, beach side, swim-up bar on the island of Jost Van Dyke, British Virgin Islands ("the Bar"). In 1979, White Bay's predecessor adopted the name SOGGY DOLLAR BAR for the Bar because patrons could only access the swim-up bar by boat since no pier existed at that time. Jost Van Dyke currently has approximately 298 residents.  However, the Bar attracts over 250,000 visitors a year, almost all of them from the U.S. Virgin Islands, which are five (5) miles across the St. Frances Drake Channel from the Bar.

12. On November 30, 2005, White Bay acquired all the intellectual property related to the Bar, its services, and its merchandise (the "Acquisition"). On the same day, White Bay's affiliate, SDB Ltd. an Anguillan corporation ("SDB"), acquired the land and all physical assets of the Bar and on that day SDB entered a license with White Bay to continue to operate under the mark "SOGGY DOLLAR BAR."

13. On information and belief, Paul and Christina "Christy" Jagodik (the "SDC Founders") established Soggy Dollar Camp, LLC on August 19, 2021.

14. On information and belief, Defendant Soggy Dollar Camp operates a principal place of business located at 9168 River Road, New Braunfels, Texas 78132 under the laws of Texas.

15. On information and belief, Defendant promotes and sells camping, lodging, and hospitality services for its campground located in New Braunfels, Texas.

## V. FACTUAL BACKGROUND

**Plaintiff's Background**

16. White Bay owns the name SOGGY DOLLAR BAR and SDB, under license from White Bay, owns and operates the Bar, which is widely known for its restaurant and bar services, and related goods and services, since at least 1978.

17.    White Bay, at all times relevant to this Complaint, since 1979, through its predecessors in interest and licensees (such predecessors in interest and licensees are herein collectively included, as appropriate, in the term "White Bay") has used, and continues to use, the SOGGY DOLLAR Marks in connection with restaurant and bar services and related products and services, to advertise, market, offer to sell, and sell such goods and services in the stream of interstate commerce throughout the U.S.

18.    White Bay's licensee in Boston, Massachusetts, operates a web-based merchandise business that promotes the Bar and the SOGGY DOLLAR Marks through sales of t-shirts, hats, pants, blankets, stickers, cups, and various other merchandise.

19.    Over the last twenty (20) years, White Bay has sold over $42,000,000 in branded merchandise at its Bar and Resort in Jost Van Dyke with $5,200,000 of such sales in 2025 alone. White Bay's 2025 Jost Van Dyke merchandise sales involved 65,000 orders. White Bay sells more than $200,000 in branded merchandise within the U.S. annually through its online retail shop.  In fact, White Bay's website at www.soggydollar.com has received more than 2,500 visits per day which amounts to 900,000 per year. White Bay exclusively operates its sales in U.S. dollars and more than 90% entail credit card sales.

20.    Furthermore, White Bay owns a web-based fan club for the Bar and SOGGY DOLLAR brand, serving more than 50,000 members, each of whom receive regular e-mail updates, newsletters, advertising, member gifts, and related items to promote the Bar's extensive U.S. customer base. Furthermore, White Bay's large social media followings include 97,000 Facebook followers and 60,000 Instagram followers. On YouTube, White Bay's SOGGY DOLLAR brand maintains 33,500 subscribers and averages about 727,000 monthly views, amounting to 90,000 hours watched per month. Additionally, White Bay's "Soggy Dollar Radio"

has received 1.4 million total music service plays with 600 daily streams amounting to approximately 30,000 hours. And its SOGGY DOLLAR App has received 40,000 total downloads with 500 hours streamed daily. Approximately ninety percent (90%) of the above media, radio, and app members, followers, and subscribers consist of U.S. consumers.

21.    For more than forty (40) years, White Bay has advertised its restaurant and bar services and related products under the SOGGY DOLLAR Marks within the U.S. and provided its services directly to U.S. consumers. And most customers who visit the Bar come from and return to the U.S. daily.

22.    White Bay has devoted considerable time, effort, and money to designing, developing, advertising, marketing, and selling its restaurant and bar-related products and services under the SOGGY DOLLAR Marks throughout the U.S. As a consequence of its efforts, White Bay has created a distinctive and well-known brand, such that its unique goods and services have become widely recognized as emanating from White Bay and as maintaining only the highest quality standards, such that the SOGGY DOLLAR Marks have achieved secondary meaning within the U.S., and have developed a large and diverse customer base and a prominent position in the U.S. market.

23.    White Bay's famous beach front Bar is widely recognized in U.S. and international publications. For instance, USA Today 10 Best (a reader's choice award) recently named the Bar as the "#1 Best Caribbean Beach Bar (2026)." **Exhibit A at 5**. In fact, the Bar received this award in 2019, 2020, 2021, 2023, 2024, and 2025, respectively. *See* printout of the Bar's website at www.soggydollar.com displaying each award in **Exhibit B at 1**.

24.    White Bay has extensively used the SOGGY DOLLAR Marks since 1979 to identify and distinguish its goods from those of its competitors, such that the SOGGY DOLLAR

Marks now represent and possess significant goodwill, which is of great monetary and reputational value to White Bay.

25.    In addition to its common law rights in its SOGGY DOLLAR Marks, through its acquisition, White Bay acquired all federal rights in multiple SOGGY DOLLAR marks in connection with the goods and services provided by White Bay within the U.S. including incontestable federal registrations for SOGGY DOLLAR BAR for *Restaurant and bar services* (U.S. Reg. No. 2,474,289) (the "'289 Registration") and SOGGY DOLLAR BAR for Rum and spirits (U.S. Reg. No. 5,759,217) (the "'217 Registration") under 15 U.S.C. § 1065.

26.    White Bay maintains federal registrations for the '289 Registration in International Class 41 and SOGGY wine and spirits for '217 Registration in International Class 33 registered in the USPTO on July 31, 2001 and May 21, 2019, respectively. True and correct copies of the registration certificates and renewal approvals for the '289 Registration and '217 Registration from the USPTO are attached hereto as **Exhibits C at 1-2 and D at 1-2**.

27.    White Bay is also known worldwide for its award-winning beachfront resort, the Sandcastle Hotel at Soggy Dollar, for hospitality, dining, and resort services since at least 1970 (the "Resort"). Because of White Bay's long-standing use of the SANDCASTLE HOTEL AT SOGGY DOLLAR mark in connection with its hospitality, dining, and resort services at the Resort, White Bay has also established common law rights in the same. Plaintiff has long advertised the Resort to U.S. consumers via its website and has also allowed U.S. consumers to make reservations at the Resort via its website. And while Hurricane Irma previously destroyed Plaintiff's Resort in 2017, White Bay is in the process of rebuilding and is again accepting reservations from U.S. consumers via its website. *See* printout of White Bay's website at

www.soggydollar.com advertising and accepting Resort reservations attached hereto as **Exhibit E at 1**.

28.     And even after its destruction, White Bay continued its promotion of the Resort along with its related bar and restaurant services to U.S. consumers. Therefore, White Bay demonstrated its intent to resume use of the SANDCASTLE HOTEL AT SOGGY DOLLAR mark after any alleged temporary nonuse on account of its destruction and reconstruction.

29.     Ultimately, since at least as early as 1979, White Bay has consistently used its distinctive and memorable WB SOGGY DOLLAR Marks to identify and distinguish its restaurant, bar, and related services to U.S. consumers and abroad from identical, similar, and complementary offerings by other entities.

30.     Given the Bar and Resort's popularity among U.S. consumers, news outlets in the U.S. covered White Bay's reconstruction of the Resort and the surrounding areas in the aftermath of Hurricane Irma in 2017. *See* the October 23, 2017 article published by the Washington, DC news outlet, WTOP NEWS, attached as **Exhibit F at 1-2**.

31.     Thus, through White Bay's consistent use of mark SANDCASTLE HOTEL AT SOGGY DOLLAR in connection with its hospitality services, it also established common law rights in the same.

32.     In addition to White Bay's well-established common law rights in its SANDCASTLE AT SOGGY DOLLAR and SOGGY DOLLAR marks, and its U.S. trademark rights in its '289 Registration and '217 Registration, White Bay owns federal trademark marks incorporating the term "SOGGY DOLLAR" including: U.S. Reg. Nos.; 6,289,703; 3,998,211; 5,181,881; and 3,994,072 (the '289 Registration, '217 Registration, and White Bay's remaining federal registrations for marks adopting the term "SOGGY DOLLAR, " collectively, the "WB

7

Registrations" and the above descriptions for SANDCASTLE AT SOGGY DOLLAR, the SOGGY DOLLAR marks, and the WB Registrations, hereinafter collectively, the "WB SOGGY DOLLAR Marks"). Certificates of Registration and renewals for eligible registrations for the WB SOGGY DOLLAR Marks are attached hereto as **Exhibits C and D**.

33.    On information and belief, on or about May 5, 2025, White Bay learned about Defendant Soggy Dollar Camp while conducting White Bay's routine Internet diligence for its WB SOGGY DOLLAR Marks and brand.

34.    After reviewing the "About" webpage on Defendant's website, White Bay quickly realized that Plaintiff's SOGGY DOLLAR brand inspired Defendant's "Soggy Dollar Camp" name and service mark selection. *See* a printout of Defendant's "About" webpage attached as **Exhibit G at 1-2.**

35.    Given its popularity, proximity, and extensive advertising, on information and belief, the SDC Founders encountered the Bar, White Bay's SOGGY DOLLAR brand, and the WB SOGGY DOLLAR Marks during a trip to the British Virgin Islands (the "BVI").

36.    On their About page, Defendant claims in part, as follows: "We were on vacation at a hotel with a pretty rocky beach but heard a mile or two down the road there was Smuggler's cove with an awesome beach. So, about 10am the next morning we hiked down a road for over a mile and found beautiful empty beach. We found this shack with a few chairs out front. We put down our stuff and headed to the water. When we go back, Nigel showed up and said the chairs are only for his customers. So, we ordered two Painkillers jokingly, and Nigel said no problem! He brought us the two drinks and a umbrella said, "Much Love" at the end of every conversation." *See* **Exhibit G at 1**.

37.     On information and belief, Smuggler's Cove is located on the island of Tortola in the BVI and situated approximately 5-8 nautical miles from Jost Van Dyke where White Bay operates the Bar. *See* **Exhibit H at 1.**

38.     Travel websites commonly promote Jost Van Dyke and the Bar alongside advertisements for Smuggler's Cove. *See* **Exhibit I at 1-2, O at 1-2, 6, and P at 3**.

39.     Furthermore, the Painkiller drink is popular across the Virgin Islands and is well known to have originated at the Bar in the 1970s. *See* **Exhibit A at 5, B at 1-2, and J at 1.**

40.     Thus, on information and belief, Defendant adopted the name "Soggy Dollar" based on the SDC Founders' encounters with the Bar or its advertising of the SOGGY DOLLAR brand and WB SOGGY DOLLAR Marks.

**Plaintiff's Enforcement**

41.     On June 12, 2025, White Bay, through its counsel, sent Defendant a cease-and-desist letter notifying Defendant of White Bay's exclusive rights in the WB SOGGY DOLLAR Marks and demanding Defendant's immediate and permanent cessation of use of White Bay's WB SOGGY DOLLAR Marks ("White Bay's June 12 Letter").

42.     On June 24, 2025, Defendant, unrepresented, responded via email ("Defendant's June 24 Email Response") to White Bay's June 12 Letter requesting an extension of time to respond thereto.

43.     On July 11, 2025, Defendant sent email correspondence to White Bay's counsel requesting a further extension due to floods in its campground ("Defendant's July 11 Response").

44.     In response to Defendant's July 11 Response, White Bay through its counsel responded and reiterated its valid and subsisting trademark rights in the WB SOGGY DOLLAR Marks and the severe risks of consumer confusion because both parties occupy the hospitality

space. Finally, on July 16, 2025, in response to White Bay's counsel's July 11, 2025 email, Defendant suggested they might change the name to SOGGY RIVER CAMP. *See* **Exhibit K at 1.** White Bay thus believed that Defendant's infringement might cease.

45.     However, on October 15, 2025, Defendant's newly retained counsel, Will Borchers ("Defendant's Counsel") contacted White Bay's counsel regarding White Bay's June 12 Letter to Defendant (the "October 15 Email"). In the October 15 Email, Defendant's Counsel indicated that Defendant would not in fact be changing its name and refused to acknowledge White Bay's valid and enforceable trademark rights.

46.     White Bay's counsel responded to Defendant's Counsel's October 15, 2025, email on October 21, 2025. In White Bay's response, again, its counsel laid out the basis of White Bay's valid federally registered and common law trademarks in the U.S. as established herein.

47.     After months of silence, Defendant's Counsel responded in an email dated February 25, 2026 (the "February 25 Email"). In the February 25 Email, Defendant's Counsel again refused to acknowledge White Bay trademark rights in its valid and certain incontestable marks for restaurant and bar services in the U.S.

**Plaintiff's Marks are Strong and Distinctive**

48.     White Bay's WB SOGGY DOLLAR Marks are used in connection with its promotion and provision of its bar and restaurant services to U.S. and international consumers within the hospitality industry.

49.     Likewise, White Bay's WB SOGGY DOLLAR Marks are suggestive of or arbitrary for its bar and restaurant services.

50.    White Bay has consistently serviced consumers in the U.S. since at least as early as 1978 under its WB SOGGY DOLLAR Marks, and it established common law rights in geographic regions across the U.S. prior to Defendant.

51.    White Bay also maintains multiple federal trademark registrations in the U.S. for certain WB SOGGY DOLLAR Marks including, but not limited to, its incontestable '289 Registration and '217 Registration.

52.    In addition to White Bay's common law rights, its maintenance of its federal registrations for numerous WB SOGGY DOLLAR Marks and the incontestability status of certain WB SOGGY DOLLAR Marks establishes that White Bay's exclusive rights therein are strong, valid, subsisting, and enforceable.

**The Marks are Similar to Consumers**

53.    Plaintiff's WB SOGGY DOLLAR Marks and Defendant's "Soggy Dollar Camp" brand name and common law service mark are nearly identical and confusingly similar in appearance.

54.    Plaintiff's WB SOGGY DOLLAR Marks and Defendant's "Soggy Dollar Camp" brand name and common law service mark are nearly identical and confusingly similar in sound.

55.    Defendant's identical use of "Soggy Dollar" in conjunction with services that are complementary to White Bay's bar and restaurant services, is sufficient to convey an identical or confusingly similar commercial impression to consumers encountering the parties' respective marks in the marketplace.

**The Marks are Used with Complementary Services**

56.    White Bay uses its Marks in conjunction with its promotion and provision of its bar and restaurant services to U.S. consumers within the U.S. hospitality industry.

11

57.   Defendant uses its name and trademark in conjunction with its promotion and provision of lodging services within the U.S. hospitality industry.

58.   White Bay's services promoted under its WB SOGGY DOLLAR Marks, more specifically, include bar services, restaurant services, and online retail store services. Plaintiff also advertises and sells the following goods under its popular WB SOGGY DOLLAR Marks: merchandise, namely, shirts, hats, and spirits, namely rum.

59.   On information and belief, Defendant's services include campground facilities for tents and RVs, cabins, entertainment services including tubing and event space rental services.

60.   White Bay and Defendant's services are complementary as both involve the provision of services to U.S. consumers within the hospitality industry. Specifically, given White Bay's reputation and notoriety for its bar and restaurant services consumers are more likely to confuse Defendant's use of "SOGGY DOLLAR CAMP" with White Bay's well-recognized WB SOGGY DOLLAR Marks and brand.

**The Marks Use Similar Facilities and Advertising**

61.   Third Parties, with the consent and authorization of White Bay have expended considerable resources to advertise and promote the Bar, Resort, SOGGY DOLLAR brand, and restaurant services to U.S. consumers.

62.   Since at least 1978, White Bay has advertised its services to consumers throughout the U.S. and Territories, including Texas under its WB SOGGY DOLLAR Marks.

63.   On information and belief, Defendant also serves consumers throughout Texas under its "Soggy Dollar Camp" brand name and service mark.

64.   On information and belief, both Plaintiff and Defendant promote their respective services and obtain customers through word-of-mouth and advertisements on each parties'

respective websites, social media accounts, and on third-party websites, which heightens the likelihood of confusion amongst consumers that encounter the term "Soggy Dollar Camp."

65.    White Bay's domain name for its website is SOGGYDOLLAR.COM. *See* the printout of White Bay's website attached as **Exhibit B**.

66.    Defendant's domain name for its website is SOGGYDOLLARCAMP.COM. *See* **Exhibit L**.

67.    White Bay's username on its Facebook Page is "Soggy Dollar Bar." *See* **Exhibit M**.

68.    Defendant's username on its Facebook Page is "Soggy Dollar Camp." *See* **Exhibit N**.

**Defendant's Intent**

69.    On information and belief, Defendant intended to copy Plaintiff's name and mark.

70.    On information and belief, Defendant did not conduct a trademark search and clearance report prior to its founding.

71.    On information and belief, Defendant knew of or should have known about White Bay due to overlaps in the parties' services and the story published on Defendant's website under the "About" page, which refers to "Smuggler's Cove." *See* printout of Defendant's "About" webpage attached as **Exhibi**t G at **1**.

72.    Also, a simple Google search for "Soggy Dollar" at any point before, during, or after Defendant's travels to Smuggler's Cove and prior to Defendant's founding would have yielded results showing White Bay's Bar and the SOGGY DOLLAR Marks and brand.

## VI. CAUSES OF ACTION

### Count 1. Federal Trademark Infringement of Plaintiff's WB Registrations Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

73.    Plaintiff repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth herein.

74.    White Bay began using one or more of its WB SOGGY DOLLAR Marks, in commerce at least as early as 1978.

75.    Defendant's use of an identical name "Soggy Dollar" followed by any word for its provision of services within the U.S. hospitality industry is confusingly similar to White Bay's WB SOGGY DOLLAR Marks.

76.    Defendant's use thereof is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's services are associated or connected with White Bay, or have the sponsorship, endorsement, or approval of White Bay.

77.    Defendant's use of an identical name - "Soggy Dollar" - is confusingly similar to Plaintiff's federal WB Registrations in violation of 15 U.S.C. § 1114. Defendant's activities are causing and will continue to cause a likelihood of confusion and deception of members of the public.

78.    Defendant's use of a nearly identical name and service mark in conjunction with complementary services creates a likelihood of confusion.

### Count 2. Common Law Trademark Infringement

79.    Plaintiff repeats and realleges paragraphs 1 through 78 hereof, as if fully set forth herein.

80.    Plaintiff began using at least one of the WB SOGGY DOLLAR Marks in commerce at least as early as 1978.

14

81. Defendant's acts constitute common law trademark infringement and unfair competition and have created and will continue to create a likelihood of confusion to the irreparable injury of Plaintiff.

82. On information and belief, Defendant acted with constructive and actual knowledge of Plaintiff's use of and common law rights to Plaintiff's WB SOGGY DOLLAR Marks, and without regard to the likelihood of confusion of the public created by Defendant's activities.

83. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's WB SOGGY DOLLAR Marks to the great and irreparable injury of Plaintiff.

84. As a result of Defendant's acts, Plaintiff is irreparably damaged.

## Count 3. Federal Trademark Infringement, False Designation of Origin, Passing Off, and Unfair Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

85. Plaintiff repeats and realleges paragraphs 1 through 84 hereof, as if fully set forth herein.

86. Defendant's actions described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant, Defendant's services, and/or Defendant's commercial activities by or with Plaintiff, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87. Defendant committed the acts described above with knowledge of and intent to cause confusion or mistake or to deceive.

## Count 4. Unfair Competition Under Texas Common Law

88. Plaintiff repeats and realleges paragraphs 1 through 87 hereof, as if fully set forth herein.

15

89.    Defendant's trademark infringement and other actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendant's services, and/or its commercial activities and those actions have interfered with Plaintiff's ability to control its brand, goodwill, customer relationships, and expansion in the hospitality market. As such, Defendant's acts constitute infringement of Plaintiff's proprietary rights in the WB SOGGY DOLLAR Marks, misappropriation of Plaintiff's goodwill in those marks, and unfair competition under Texas common law.

**Count 5. Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

90.    Plaintiff repeats and realleges paragraphs 1 through 89 hereof, as if fully set forth herein.

91.    Defendant's actions described above are likely to cause dilution by blurring of Plaintiff's famous WB SOGGY DOLLAR Marks.

92.    White Bay has extensively advertised its WB SOGGY DOLLAR Marks to consumers in the U.S. consistently since 1978. U.S. consumers remain as White Bay's primary customer-base.

93.    Third parties within the U.S. widely recognize and promote White Bay's WB SOGGY DOLLAR Marks, contributing to White Bay's fame and notoriety among U.S. consumers. For example, major travel booking providers, TRIP ADVISOR, based in Needham, Massachusetts, and EXPEDIA, based in Seattle, Washington, widely advertise the Bar. *See* **Exhibits O and P**.

94.    And consumers in the U.S. widely recognize White Bay as the sole source of goods and services promoted and sold under the WB SOGGY DOLLAR Marks as evidenced by USA10

Best reader's choice award for the #1 best Caribbean bar in 2019, 2020, 2021, 2023, 2024, 2025, and 2026. *See* **Exhibit A at 5**.

95.     Ultimately, White Bay's federal registrations for multiple WB SOGGY DOLLAR Marks confirm its fame and inherent distinctiveness for White Bay's goods and services provided thereunder.

96.     On information and belief, Defendant intended to create an association with WB's SOGGY DOLLAR Marks and brand when it selected its mark.

97.     On information and belief, actual association between the defendant's mark or trade name and the famous mark exists in the marketplace.

**VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

1.     That the Court enter a judgment against Defendant that Defendant has infringed the rights of Plaintiff in the WB SOGGY DOLLAR Marks that have been federally registered in the United States Patent and Trademark Office, in violation of 15 U.S.C. §§ 1114 and 1125(a), and (c);

2.     That the Court enter a judgment against Defendant that Defendant engaged in unfair competition and deceptive acts and practices in violation of Texas common law;

3.     That each of the above acts was willful;

4.     That the Court issue a permanent injunction enjoining and restraining Defendant and its agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant from:

a.      Engaging in, or contributing to, any infringing activity including advertising, promoting, marketing, franchising, selling, and offering for sale any goods or services in connection with the WB SOGGY DOLLAR Marks or any similar mark;

b.      Using any domain name, or social media account, that is identical or confusingly similar to the WB SOGGY DOLLAR Marks;

c.      Engaging in any unfair competition with Plaintiff; and

d.      Engaging in any deceptive acts;

5.      That Plaintiff be awarded damages for trademark infringement and unfair competition and that these damages be trebled due to Defendant's willfulness, in accordance with the provisions of 15 U.S.C. § 1117;

6.      That Defendant be ordered to account for and disgorge to Plaintiff all amounts by which Defendant has been unjustly enriched by reason of the unlawful acts complained of;

7.      For prejudgment interest on all infringement damages;

8.      That the Court award Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, Texas law, and any other applicable provision of law;

9.      That the Court award Plaintiff its costs of suit incurred herein; and

10.     For such other or further relief as the Court may deem just and proper.

## VIII. JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

DATED this 24th day of April 2026.

18

Respectfully submitted,

**WHITE BAY PARTNERS, LLC**

By:/s/ *M. David Le Blanc*
>**M. David Le Blanc**
>Attorney-in-Charge
>State Bar No. 00791090
>Federal I.D. No. 10097
>dleblanc@greerherz.com
>Greer, Herz & Adams, LLP
>2525 South Shore Blvd., Suite 203
>League City, TX  77573
>Telephone:  (409) 797-3241
>Facsimile:  (866) 880-1519

>**Joseph Z. Cavanah**
>State Bar No. 24087276
>Federal I.D. No. 2508061
>jcavanah@greerherz.com
>Greer, Herz & Adams, L.L.P.
>4600 South Syracuse
>Denver, Colorado 80237
>Telephone: (409) 797-3200
>Facsimile:  (966) 880-1519
>*Pro Hac Vice Motion forthcoming*

By:  /s/ *Clinton H. Brannon*
>**Clinton H. Brannon**
>Virginia State Bar No. 72340
>**Amy G. Pruett**
>Virginia State Bar No. 71236
>Counsel for Plaintiff
>WILLIAMS MULLEN
>8350 Broad Street, Suite 1600
>Tysons, Virginia 22102
>Telephone: (703) 760-5226
>Facsimile: (703) 748-0244
>cbrannon@williamsmullen.com
>apruett@williamsmullen.com

>*Attorneys for Plaintiffs*

19